[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-11513

Non-Argument Calendar

_____

JOSE EDUARDO CHAVEZ-GUTIERREZ,
a.k.a. Fabricio Jose Chavez Flores,

Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A077-317-253

_____

Before ROSENBAUM, GRANT, and TJOFLAT, Circuit Judges.

PER CURIAM:

Jose Chavez-Gutierrez seeks review of the Board of Immigration Appeals' (BIA) denial of his application for asylum and withholding of removal. He argues that the BIA erred in affirming the Immigration Judge's (IJ) finding that his asylum application was untimely and in affirming the IJ's alternative finding that that he failed to establish eligibility for withholding of removal. He contends that substantial evidence does not support the IJ's finding. For the reasons below, Chavez-Gutierrez's petition is denied.

## I. Background

Chavez-Gutierrez, a native and citizen of El Salvador, entered the United States without authorization on May 23, 2001. On June 3, 2001, the Department of Homeland Security served Chavez-Gutierrez with a Notice to Appear (NTA), charging him with removal under Immigration and Nationality Act (INA) § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), for being present in the United States without admission or parole,[1] and requiring him to appear before an IJ in Los Angeles, California, on October 16, 2001,

---

[1] Under 8 U.S.C. § 1182(a)(6)(A)(i), "[a]n alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible."

for a removal hearing. Chavez-Gutierrez failed to appear at the hearing, and the IJ ordered him removed in absentia.

On June 1, 2017, Chavez-Gutierrez moved to reopen the case and to change the venue to Miami, Florida. On June 15, 2001, the IJ granted his motion to reopen and his request to change venue to Miami, Florida.

On November 3, 2017, Chavez-Gutierrez applied for asylum, withholding of removal, and relief under the United Nations Convention Against Torture (CAT). He based his asylum and withholding of removal claims on his membership in a particular social group. Specifically, he alleged that two Mara 18 gang members severely beat him, held a knife to his stomach, and threatened him. He expressed fear for his life upon returning to El Salvador, citing the pervasive influence of gangs throughout the country and the inability of corrupt police to assist those targeted by gangs.

### A. Hearing Before Immigration Judge

On May 3, 2018, an IJ conducted a merits hearing. Chavez-Gutierrez provided testimony about his reasons for leaving El Salvador in 2001 due to threats and violence caused by gangs. During the hearing, Chavez-Gutierrez recounted multiple incidents illustrating the dangers he faced.

In one instance, three Mara 18 gang members armed with knives sought to recruit him, threatening to beat him or "make him disappear" if he refused. On another occasion, over four Mara 18 gang members approached him to discuss joining the gang. When he declined, they resorted to threats and physical violence,

demanding his participation.  In a separate encounter, four Mara 18 gang members assaulted and threatened him, throwing him to the ground, hitting him in the face and stomach, and warning that they would kill him if he did not join.  He did not know the reasons for the gang's insistence on recruiting him.

Before fleeing El Salvador, Chavez-Gutierrez was approached once more but managed to escape.  In a related incident in 2000, he had a confrontation with the MS gang, where he was beaten, robbed of his money, and pressured to join their gang.

Following these encounters, Chavez-Gutierrez fled El Salvador.  He explained that relocating within the country was not a viable option due to the omnipresence of gangs.  Adding to his apprehension, he was aware of two friends who were killed for refusing to join a gang.  Still, he did not report these incidents to the police, seek medical treatment, or sustain any injuries as a result of these encounters.

### B.  The IJ's Decision

In an oral decision, the IJ denied Chavez-Gutierrez's application for asylum, withholding of removal, and CAT relief.  The IJ found Chavez-Gutierrez's testimony at the removal hearing credible.  Despite the incidents occurring more than fifteen years ago, the IJ found Chavez-Gutierrez's responses candid and consistent.

The IJ then determined that Chavez-Gutierrez's asylum application was untimely, noting that it was filed over fifteen years after he entered the United States.  The IJ rejected his argument that lack of legal knowledge constituted a valid excuse for the delay

and also dismissed claims of changing circumstances in El Salvador, finding insufficient evidence to support such changes.

Alternatively, the IJ addressed the merits of Chavez-Gutierrez's application for asylum and concluded that he failed to meet his burden of proof. He had not shown a well-founded fear of persecution, as the beatings he described appeared minor without resulting in injury or the need for medical attention. The IJ also noted discrepancies between Chavez-Gutierrez's testimony and his application, including that he did not testify that a knife was held to his stomach as he stated in his application for asylum. And because he failed to provide evidence that the gang members who harmed him would likely seek to do so again, the IJ determined that he also did not establish a well-founded fear of future persecution.

Assuming that Chavez-Gutierrez established past persecution or a well-founded fear of future persecution, he failed to establish a nexus between the persecution and a protected ground. The IJ found that his proposed social group—"Catholics and family members from El Salvador who resist intimidation and oppose recruitment efforts by Mara 18 based on personal moral and religious opposition to the gang's values and activities"—was not cognizable because of a lack of social distinction. Moreover, he failed to establish a nexus between the proposed social group and the harm he suffered because the gang members harmed him as a part of their criminal activity. Having been the victim of criminal activity is not a basis for asylum.

The IJ also rejected the argument that the gang's effort to recruit him constituted a protected ground, finding that he was not targeted based on any aspect of his membership in the proposed social group.  The IJ underscored Chavez-Gutierrez's testimony that he was unsure why the gang members targeted him.

Thus, the IJ denied Chavez-Gutierrez's claim for asylum, withholding of removal, and CAT relief, finding that he neither met his burden for asylum nor the higher burden for withholding of removal and CAT relief.

## C.  Appeal to the BIA

Chavez-Gutierrez timely appealed the IJ's decision to the BIA and simultaneously submitted a request for consideration of *Mendez-Rojas* class membership.[2]

In his brief, Chavez-Gutierrez raised three key arguments. First, he argued that because of the settlement agreement in *Mendez-Rojas v. Wolf*, the IJ erred in finding his asylum application untimely.  Second, he argued that the IJ's conclusion that he failed to meet the burden of establishing an asylum claim was erroneous. Chavez-Gutierrez maintained that—considering the totality of the circumstances—his credible testimony and detailed information showed he was a refugee unwilling or unable to return to El

---

[2] On November 4, 2020, the District Court for the Western District of Washington approved a settlement agreement in *Mendez Rojas v. Wolf*, No. 2:16-CV-01024-RSM (W.D. Wash. Nov. 4, 2020).  This was a class-action lawsuit pertaining to the one-year filing deadline for asylum applications.

Salvador, having suffered past persecution or harboring a well-founded fear of future persecution based on his membership in a particular social group.  Last, he asserted that the IJ's denial of his asylum application violated due process, as the IJ required precise boundaries for the particular social group he invoked, unlike other asylum-protected grounds.

The BIA dismissed the appeal.  After noting that the IJ found Chavez-Gutierrez's asylum application untimely, the BIA focused on the IJ's alternative decision that Chavez-Gutierrez failed to meet the burden of proof required for asylum.  The BIA found no clear error in the factual findings underpinning the IJ's denial of asylum, explaining that the threats, beatings, and the gangs' efforts to recruit Chavez-Gutierrez did not rise to the level of persecution.

The BIA also found no clear error in the IJ's conclusion that Chavez-Gutierrez failed to establish that the harm he encountered was on account of a protected ground.  He was a crime victim but not due to his membership in the proposed social group.  Because Chavez-Gutierrez failed to meet the lower burden of proof for asylum, he also failed to meet the burden of proving entitlement to withholding of removal and CAT relief.

## II.  Discussion

Chavez-Gutierrez contends that the BIA erred in affirming the IJ's finding that his asylum application was untimely and the IJ's alternative holding that he failed to meet the burden of establishing

asylum.[3]  Regarding the IJ's alternative holding, Chavez-Gutierrez argues that the IJ's finding of no past persecution contradicts the IJ's finding that his testimony was credible, testimony that outlined four incidents establishing past persecution.  Furthermore, he cites a statement the IJ made during the removal hearing in which the IJ purported to acknowledge that he had established past persecution or a well-founded fear.

We review the agency's factual findings for substantial evidence.  *Perez-Zenteno v. U.S. Att'y Gen.*, 913 F.3d 1301, 1306 (11th Cir. 2019).  This entails "view[ing] the record evidence in the light most favorable to the agency's decision and draw[ing] all reasonable inferences in favor of that decision."  *Id.* (quoting *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004)).  Our standard is to affirm the BIA's decision "if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole."  *Id.* (quoting *D-Muhumed v. U.S. Att'y Gen.*, 388 F.3d 814, 818 (11th Cir. 2004)).  To reverse any factual findings, we must determine that the record not only supports reversal but also compels it.  *Id.*  Thus, unless there is no reasonable basis for the agency's decision, we must affirm.  *Id.*

---

[3] By not addressing it in his brief, Chavez-Gutierrez forfeited any challenge to the denial of relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment.  *See United States v. Campbell*, 26 F.4th 860, 873 (11th Cir.) (en banc), *cert. denied*, 143 S. Ct. 95 (2022) ("[T]he mere failure to raise an issue in an initial brief on direct appeal should be treated as a forfeiture of the issue.").

To qualify for asylum, the applicant must present specific and credible evidence showing either past persecution based on a statutorily listed factor or a well-founded fear of future persecution based on such a factor. *Diallo v. U.S. Att'y Gen.*, 596 F.3d 1329, 1332 (11th Cir. 2010) (per curiam). "[P]ersecution is 'an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation, and . . . mere harassment does not amount to persecution.'" *Id.* at 1333 (quoting *Zheng v. U.S. Att'y Gen.*, 451 F.3d 1287, 1290 (11th Cir.2006)).

When assessing whether an applicant has suffered past persecution, the IJ must consider the cumulative effect of incidents. *Id.* Although serious physical injury is not a prerequisite for proving past persecution, lesser physical abuse and brief detentions do not automatically add up to such a finding. *See De Santamaria v. U.S. Att'y Gen.*, 525 F.3d 999, 1009 (11th Cir. 2008); *see also Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1352–53 (11th Cir. 2009) (evidence that petitioner was arrested, interrogated, beaten for five hours, and detained for four days did not compel a finding of past persecution where petitioner did not show he suffered any physical harm); *Zheng*, 451 F.3d at 1290–91 (evidence that petitioner had been detained for five days, forced to watch reeducation videos, stand in the sun for two hours, and sign a pledge to no longer practice his religion did not compel a finding of persecution). Moreover, a credible death threat, made by someone with the immediate ability to carry it out, constitutes persecution whether or not the threat is executed. *Diallo*, 596 F.3d at 1333–34.

Past persecution creates a rebuttable presumption of a well-founded fear of future persecution. *De Santamaria*, 525 F.3d at 1007. Without establishing past persecution, an asylum applicant may show a well-founded fear of future persecution by showing "(1) a subjectively genuine and objectively reasonable fear of persecution that is (2) on account of a protected ground." *Id.*

Furthermore, the applicant must establish a nexus between the feared persecution and a protected ground, demonstrating that one of the enumerated grounds was or will be at least one central reason for the persecution. *See* INA § 208(b)(1)(B)(i), 8 U.S.C. § 1158(b)(1)(B)(i). Evidence consistent with general criminal activity does not fulfill the nexus requirement. *See Sanchez-Castro v. U.S. Att'y Gen.*, 998 F.3d 1281, 1288 (11th Cir. 2021).

An applicant's testimony, without corroboration, can be sufficient to meet the burden of proof for establishing eligibility for relief from removal if it is credible. *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1255 (11th Cir. 2006) (per curiam). That said, credible testimony alone does not guarantee relief from removal if the applicant fails to meet their burden concerning asylum. *See, e.g., Djonda v. U.S. Att'y Gen.*, 514 F.3d 1168, 1173, 1177 (11th Cir. 2008) (petitioner had not satisfied the standard for asylum even though the IJ found the petitioner's testimony credible); *Zheng*, 451 F.3d at 1289, 92 (same).

An applicant is eligible for withholding of removal if he shows that, upon return to his country, he is more likely than not to be persecuted based on a protected ground. *See Sepulveda v. U.S.*

*Att'y Gen.*, 401 F.3d 1226, 1232 (11th Cir. 2005) (per curiam); INA § 241(b)(3), 8 U.S.C. § 1231(b)(3). If an applicant cannot meet the "well-founded fear" standard of asylum, he generally will not qualify for withholding of removal. *Kazemzadeh*, 577 F.3d at 1352.

First, although Chavez-Gutierrez appealed the IJ's finding that his asylum application was untimely, the BIA's opinion does not address the merits of the finding or otherwise rule on the timeliness issue. We do not consider issues not reached by the BIA. *See Gonzalez v. U.S. Atty. Gen.*, 820 F.3d 399, 403 (11th Cir. 2016) (per curiam). Likewise, the BIA did not review the IJ's finding that Chavez-Gutierrez's social group was cognizable. We therefore do not review that finding. In sum, we decline to address either issue.

As for the issues the BIA did reach, there is substantial evidence supporting its decision to uphold the IJ's finding that the mistreatment Chavez-Gutierrez experienced did not rise to the level of persecution. Chavez-Gutierrez argues that the IJ's finding that his testimony was credible required a finding that he suffered past persecution, but that finding is not automatically required by the IJ's credibility finding. *See, e.g., Djonda*, 514 F.3d at 1173–74; *Zheng*, 451 F.3d at 1289–92. Further, substantial evidence supports the BIA's finding that Chavez-Gutierrez failed to establish past persecution. His testimony revealed a lack of physical injuries or the need for medical attention as a result of his encounters with the Mara 18 gang members. This suggests that the cumulative effects of his harm did not rise to the level of past persecution.

Substantial evidence also supports distinguishing this case from *Diallo*.  The IJ found that the Mara 18 members who threatened Chavez-Gutierrez did not have the immediate ability or intention to carry them out.  They did not try to kill him and their threats of physical harm did not result in injuries.

Next, substantial evidence supports the BIA's holding that Chavez-Gutierrez did not establish a nexus between the harm suffered and a protected ground.  Evidence in the record supports the finding that the gang members did not target him because of his membership in his proposed social group.  We cannot fault the BIA's holding that Chavez-Gutierrez failed to establish a nexus between the gang members' criminal behavior and his membership in the designated social group.  *See Sanchez-Castro*, 998 F.3d at 1288.

Finally, substantial evidence supports a finding that Chavez-Gutierrez failed to show a fear of future persecution that is subjectively genuine and objectively reasonable given the time that has passed since the incidents in question occurred.  Thus, viewing the record evidence in the light most favorable to the agency's decision and drawing all reasonable inferences in favor of that decision, the record does not compel reversal of the BIA's affirmance of the IJ's denial of Chavez-Gutierrez's application for asylum.  And because Chavez-Gutierrez failed to meet the "well-founded fear" standard for establishing asylum, substantial evidence supports the determination that he is not eligible for withholding of removal.  *See Kazemzadeh*, 577 F.3d at 1352.

**PETITION DENIED.**